TERRELL, Justice.
April 14,' 1954, appellee as plaintiff filed its complaint against appellant as defendant praying that Ordinance 47 of the Village of Virginia Gardens be adjudicated to be unconstitutional and for temporary injunction restraining enforcement of said ordinance. April 16, a special master was appointed to take testimony as to the matter of granting the temporary injunction. *182 In the meantime, an amended complaint was filed praying for declaratory decree and other relief. A rash of other pleadings was filed that are not material and served no useful purpose. The cause came on for hearing before the chancellor November 9, 1954, and on July 25, 1955, a final decree was entered whereby Ordinances 47 and 49 of appellant Village of Virginia Gardens were declared unconstitutional and the defendant was enjoined from enforcing them. This appeal is from the final decree.
The plaintiff has a franchise to furnish water to its patrons in the municipality. This is a controversy about the charges made for water. The parties are wide at variance as to the questions presented. Since the question of jurisdiction is challenged, we first consider that query. It is charged that the chancellor was without jurisdiction to hear and determine the cause because appellant sat as a rate making body with power to fix water rates and there is no showing that appellee exhausted its remedy before the administrative body.
Appellant merely asserted that appellee did not exhaust its administrative remedy. There was no showing that such a remedy existed and when that is the case, it takes more than the mere ipse dixit of one asserting it to establish such a remedy. It appears from the record that counsel for both parties stipulated in the lower court that there was no prescribed administrative procedure available to them to seek a settlement of the water rate question. One of the councilmen, being a defendant, testified that there was no ordinance of appellant in effect relating to procedure for establishing water rates. In addition to the foregoing, the evidence conclusively shows that by attempts at negotiation and otherwise appellee pursued and exhausted every remedy available to it to settle the controversy with the Village before institution. of this suit.
It is next contended that the chancellor muffed the ball in ruling on the validity of Ordinance 49 as well as Ordinance 47, the inference being that the issue as to both was not raised in the pleadings but was tried by implied consént of the parties.
The validity vel non of Ordinance 49 was expressly raised in the trial court by answer of appellant to the amended complaint as follows: “Ordinance 47 was, on the 18th day of May, 1954, amended by Ordinance 49, a copy of which is attached hereto and made a part hereof, marked Exhibit 1.” Paragraph XVI, answer to the amended complaint, referred to “rates as fixed by Ordinances No. 47 and 49.” Ordinance 49 is entitled “An Ordinance Amending Ordinance 47, Establishing the Rates Which Shall be Charged for Water in the Village of Virginia Gardens, Florida.” As stated in the contents, the purpose of Ordinance 49 was to clarify Ordinance 47 and correct certain typographical errors made by the scrivener. The record shows that the effect of Ordinances 47 and 49 was to reduce the gross receipts of the plaintiff water company from the sale of water by 20 percent. From these and other factual recitals that could be interposed it appears that the answer to the question falls squarely within Rule 1.15(b), Rules of Civil Procedure, 30 F.S.A. It is also shown that appellant’s attorney agreed to.' amend Ordinance 47 in order to cure, the defects in its draftsmanship which was done for the purpose of presenting a clear issue in regard to confiscatory rates sought to be imposed. See T.R. 549, line 12.
The real point in the case is. whether or not a water rate which reduces the water company’s gross receipts below its reasonable costs and expenses of operation is violative of the Fourteenth Amendment to the Federal Constitution; Section 12, Declaration of Rights, Florida .Constitution, F.S.A., and Sec. 167.57, Florida Statutes 1953, F.S.A.
Appellee contends that it is a privately owned water company; that all its water lines are within the boundaries of appellant' Village; that appellant undertook by ordi *183 nance to reduce appellee’s water rates and that appellee brought this suit to enjoin enforcement of the reduced rates on the ground that they were confiscatory, unconstitutional and contrary to Sec. 167.57, Florida Statutes 1953, F.S.A., the effect of which is that any city, town or village may prescribe by ordinance maximum rates for water provided that such charges be just and reasonable. The provisions of the State and Federal Constitutions have reference to due process and equal protection when dealing with life and property.
The question is whether or not the reduced rate invades these principles of organic and statutory law. The answer to the question turns on whether or not the chancellor applied the correct test in determining the cost of water production and delivery - to the customers. It is admitted that the test period used was February 1, 1953, to January 31, 1954, and that the ordinance rate imposed reduced plaintiff’s gross 'receipts from water sales 20 percent. Evidence shows that gross water receipts for the test period were $12,780.77 and that when reduced by 20 percent the amount was $10,224.62. The evidence further shows that the cost of operation during the test period was $11,222.49. This compared with gross income leaves a net loss of $997.67 for the test period. By the chancellor’s tabulation for the same test period, gross receipts were $11,990.72 and costs were $15,055.16, which compared leaves a net loss of $3,064.44. The difference in the chancellor’s figures from the previous ones was in the chancellor’s refusal to allow any compensation for officers and employees of the water company. These were legitimate operating expenses and should have been allowed. Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 So. 833, 3 L.R.A. 661.
The cases universally hold that utility rates, when adopted, must be adequate to produce a reasonable return on capital investment-and to meet operating expenses. McCardle v. Indianapolis Water Co., 272 U.S. 400, 408, 47 S.Ct. 144, 71 L.Ed. 316; Pichotta v. City of Skagway, D.C.Alaska, 78 F.Supp. 999; Alabama Public Service Commission v. Southern Bell Telephone & Telegraph Co., 253 Ala. 1, 42 So.2d 655, and many others could be cited to support this general rule.
Several other questions are argued but they are all comprehended in the question last discussed. We therefore affirm the judgment of the trial court holding Ordinances 47 and 49 unconstitutional except as to that part reading, “or any rates not consistent with the findings herein mad'e,” with directions to proceed as indicated herein.
Affirmed with directions.
DREW, C. J., and THORNAL and HOBSON, JJ., concur.